UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------- x

| | |
|---|---|
| | : Case No. 1:24-cv-02295-ALC |
| BERNARD T. ANDERSON BEY, | : |
| | : Hon. Andrew L. Carter, Jr. |
| Plaintiff, | : |
| -against- | : |
| | : |
| ROC NATION LLC et al., | : |
| | : |
| Defendant. | : |
| | : |

---------------------------------------------------------- x

**DEFENDANT COINBASE, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION, OR IN THE ALTERNATIVE, TO DISMISS THE COMPLAINT**

**BRYAN CAVE LEIGHTON PAISNER LLP**
1290 Avenue of the Americas
New York, New York 10104
Tel: (212) 541-3163
Fax: (212) 541-4630
Chris M. LaRocco, Esq.
Ashley Hyun-Jeong Kim, Esq.

*Counsel for Defendant Coinbase, Inc.*

# TABLE OF CONTENTS

INTRODUCTION ........ 1

BACKGROUND ........ 2

I. Plaintiff's Customer Relationship with Coinbase. ........ 2

II. Plaintiff's Allegations. ........ 5

LEGAL STANDARD ........ 6

ARGUMENT ........ 8

I. The Court Should Compel Arbitration and Stay the Proceedings Under the FAA. ........ 8

A. Plaintiff and Coinbase Agreed to Final, Binding Arbitration. ........ 8

B. The 2023 User Agreement Clearly and Unmistakably Delegates Questions of Arbitrability to the Arbitrator ........ 12

C. The 2023 User Agreement Is Valid, Enforceable, and Encompasses Plaintiff's Claims. ........ 14

1. The 2023 User Agreement Is Presumptively Valid and Enforceable. ........ 15

2. Plaintiff's Claims Fall Within the Scope of the Arbitration Clauses. ........ 17

D. Plaintiff Would Still be Required to Arbitrate His Claims Under the 2020 and 2022 User Agreements. ........ 17

E. This Action Should be Stayed Pending Completion of Arbitration. ........ 18

II. In the Alternative, the Court Should Dismiss This Action for Failure to State a Claim Under Fed. R. Civ. P. 12(b)(6). ........ 19

CONCLUSION ........ 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aggarwal v. Coinbase, Inc.*,
2023 WL 4935003 (N.D. Cal. Aug. 2, 2023) ....................13, 14

*Aleph Towers, LLC v. Ambit Texas, LLC*,
2013 WL 4517278 (E.D.N.Y. Aug. 23, 2013)....................19, 20, 21

*Alfia v. Coinbase Glob., Inc.*,
2022 WL 3205036 (N.D. Cal. July 22, 2022)....................16

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................19

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011)....................15

*AT&T Techs., Inc. v. Commc'n Workers of Am.*,
475 U.S. 643 (1986)....................8

*B.D. v. Blizzard Ent., Inc.*,
76 Cal. App. 5th 931 (2022) ....................8

*Berk v. Coinbase, Inc.*,
840 F. App'x 914 (9th Cir. 2020) ....................1

*Bielski v. Coinbase, Inc.*,
87 F.4th 1003 (9th Cir. 2023) ....................1, 13, 16

*Brennan v. Opus Bank*,
796 F.3d 1125 (9th Cir. 2015) ....................12

*Campbell v. eBay, Inc.*,
2014 WL 3950671 (N.D. Cal. Aug. 11, 2014) ....................11

*Cano v. SEIU Loc. 32BJ*,
2021 WL 4480274 (S.D.N.Y. Sept. 30, 2021)....................19

*Carvel v. Ross*,
2011 WL 856283 (S.D.N.Y. Feb. 16, 2011)....................19

*Citizens Bank v. Alafabco, Inc.*,
539 U.S. 52 (2003) (*per curiam*) ....................6

*Clarendon Nat'l Ins. Co. v. Lan*,
152 F. Supp. 2d 506 (S.D.N.Y. 2001)....................17

*Contec Corp. v. Remote Solution, Co.*,
398 F.3d 205 (2d Cir. 2005)....................7

*Dean Witter Reynolds, Inc. v. Byrd*,
470 U.S. 213 (1985)....................7

*DeVries v. Experian Information Solutions, Inc.*,
2017 WL 733096 (N.D. Cal. Feb. 24, 2017)....................11

*Donovan v. Coinbase Glob., Inc.*,
649 F. Supp. 3d 946 (N.D. Cal. 2023)....................13, 14, 16

*Fisher v. Aetna Life Ins. Co.*,
32 F.4th 124 (2d Cir. 2022)....................8

*Flores v. Coinbase, Inc.*,
2023 WL 3564756 (C.D. Cal. Apr. 6, 2023)....................9, 13, 14

*Foran v. Nat'l Football League*,
2019 WL 2408030 (S.D.N.Y. June 7, 2019)....................12, 13, 14

*Gerlach v. Tickmark Inc.*,
2021 WL 3191692 (N.D. Cal. July 28, 2021)....................12

*Gilmer v. Interstate/Johnson Lane Corp.*,
500 U.S. 20 (1991)....................6

*Green Tree Fin. Corp.-Ala. v. Randolph*,
531 U.S. 79 (2000)....................7, 15

*Henry Schein, Inc. v. Archer and White Sales, Inc.*,
586 U.S. 63 (2019)....................12, 14

*Himber v. Live Nation Worldwide, Inc.*,
2018 WL 2304770 (E.D.N.Y. May 21, 2018)....................11

*Holley-Gallegly v. TA Operating, LLC*,
74 F.4th 997 (9th Cir. July 21, 2023)....................14

*Isaacs v. OCE Bus. Servs., Inc.*,
968 F. Supp. 2d 564 (S.D.N.Y. 2013)....................15

*Kamath v. Coinbase, Inc.*,
2024 WL 950163 (N.D. Cal. Mar. 5, 2024)....................9

*Kattula v. Coinbase Glob., Inc.*,
2023 WL 4373385 (N.D. Ga. July 6, 2023)....................16

*Katz v. Cellco P'ship*,
794 F.3d 341 (2d Cir. 2015)....................18

*Levin v. Caviar, Inc.*,
146 F. Supp. 3d 1146 (N.D. Cal. 2015) ....................9

*M & T Bank Corp. v. LaSalle Bank Nat. Ass'n*,
852 F. Supp. 2d 324 (W.D.N.Y. 2012) ....................21

*Mahmoud v. Coinbase, Inc.*,
2022 WL 18799657 (Cal. Sup. Ct., Oct. 19, 2022) ....................16

*Matera v. Google Inc.*,
2016 WL 5339806 (N.D. Cal. Sept. 23, 2016) ....................11

*McAllister v. East*,
611 F. App'x 17 (2d Cir. 2015) ....................8

*McLellan v. Fitbit, Inc.*,
2017 WL 4551484 (N.D. Cal. Oct. 11, 2017)....................12, 13

*McLellan v. Fitbit, Inc.*,
2018 WL 1913832 (N.D. Cal. Jan. 24, 2018) ....................9

*Neurosigma, Inc. v. De Salles*,
2014 WL 12803168 (C.D. Cal. Jan. 31, 2014) ....................17

*Nguyen v. Barnes & Noble Inc.*,
763 F.3d 1171 (9th Cir. 2014) ....................9

*Nicosia v. Amazon.com, Inc.*,
834 F.3d 220 (2d Cir. 2016)....................8

*Oppenheimer & Co. v. Neidhardt*,
56 F.3d 352 (2d Cir. 1995)....................7

*Oracle Am., Inc. v. Myriad Grp. A.G.*,
724 F.3d 1069 (9th Cir. 2013) ....................12

*PaineWebber Inc. v. Bybyk*,
81 F.3d 1193 (2d Cir. 1996)....................7

*Pearl v. Coinbase Glob., Inc.*,
2023 WL 1769190 (N.D. Cal. Feb. 3, 2023) ....................13, 14

*Peter v. DoorDash, Inc.*,
445 F. Supp. 3d 580 (N.D. Cal. 2020) ....................................................................9

*Pierre v. Coinbase, Inc.*,
2021 WL 1538015 (Sup. Ct., N.Y. Cnty. Apr. 14, 2021) ..................................................16

*Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Deve. (US), LLC*,
55 Cal. 4th 223 (2012) ....................................................................................15

*Reese v. Triborough Bridge & Tunnel Auth.*,
91 F.4th 582 (2d Cir. 2024) ...............................................................................21

*Rent-A-Center, West, Inc. v. Jackson*,
561 U.S. 63 (2010)......................................................................................7, 14

*Reznik v. Coinbase, Inc.*,
2024 WL 1055002 (S.D.N.Y. Mar. 11, 2024) ............................................................ *passim*

*Savetsky v. Pre-Paid Legal Services, Inc.*,
2015 WL 604767 (N.D. Cal. Feb. 12, 2015) ............................................................9

*Schoenduve Corp. v. Lucent Techs., Inc.*,
442 F.3d 727 (9th Cir. 2006) .............................................................................17

*Shaw Grp. Inc. v. Triplefine Int'l Corp.*,
322 F.3d 115 (2d Cir. 2003).................................................................................7

*Shearson/Am. Exp., Inc. v. McMahon*,
482 U.S. 220 (1987).........................................................................................15

*Stover v. Experian Holdings, Inc.*,
2018 WL 11462838, (C.D. Cal. Oct. 31, 2018), *on reconsideration in part*,
2019 WL 13241682 (C.D. Cal. Jan. 30, 2019), *and aff'd*, 978 F.3d 1082 (9th
Cir. 2020) ...................................................................................................11

*Sultan v. Coinbase, Inc.*,
354 F. Supp. 3d 156 (E.D.N.Y. 2019) ..................................................................10

*Tarverdiyeva v. Coinbase Global, Inc.*,
2021 WL 4527960 (M.D. Fla. Sept. 8, 2021).........................................................16

*Town & Country Linen Corp. v. Ingenious Designs LLC*,
556 F. Supp. 3d 222 (S.D.N.Y. 2021).....................................................................20

*UBS Fin. Servs., Inc. v. W. Virginia Univ. Hosps., Inc.*,
660 F.3d 643 (2d Cir. 2011)...............................................................................22

*United States v. Y%20ucel*,
97 F. Supp. 3d 413 (S.D.N.Y. 2015)....................6

*Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Jr. Univ.*,
489 U.S. 468 (1989)....................6

**Statutes**

9 U.S.C. § 1 *et seq.*....................2, 6, 8

9 U.S.C. § 2....................6, 8, 15

9 U.S.C. § 3....................18

18 U.S.C. § 1836(b)(1)....................20

**Other Authorities**

AAA Rule 14(a)....................14

Fed. R. Civ. P. 12(b)(6)....................2, 19

## INTRODUCTION

Plaintiff, Bernard T. Anderson Bey ("Plaintiff"), expressly and affirmatively entered into a User Agreement with Defendant Coinbase, Inc. ("Coinbase"). Plaintiff continued to use Coinbase's services after he initially created his account, and in so doing, accepted updated user agreements, including an update in April 2023. In agreeing to Coinbase's User Agreement, Plaintiff made two commitments to Coinbase that are relevant to this motion. First, he agreed that "any dispute, claim [or] disagreements arising out of or relating in any way" to either the User Agreement or the services provided by Coinbase "will be resolved by binding arbitration, rather than in court[.]" *See* Declaration of Suellen Black ("Black Decl."), Ex. 5 (the "2023 Coinbase User Agreement"), Appx. 5 § 1.1. Second, Plaintiff agreed that an arbitrator, not this Court, would determine whether a dispute fell within the scope of the parties' arbitration agreement. *Id.*, Appx. 5 § 1.6. Now, despite those clear commitments, Plaintiff has filed this action in federal court.

There can be no serious dispute that a valid arbitration agreement exists. Even if there were a credible dispute about whether Plaintiff's claims are arbitrable (there is not), that dispute is to be resolved by an arbitrator pursuant to the User Agreement's delegation clause. As detailed herein, courts across the country, including this Court, have consistently enforced the arbitration provision found in various versions of Coinbase's User Agreement. *See, e.g., Reznik v. Coinbase, Inc.*, 2024 WL 1055002 (S.D.N.Y. Mar. 11, 2024) (enforcing arbitration and compelling arbitration). In fact, the Ninth Circuit has now twice reversed district courts for denying Coinbase's motions to compel. *Bielski v. Coinbase, Inc.*, 87 F.4th 1003, 1015 (9th Cir. 2023) (reversing district court's order denying Coinbase's motion to compel arbitration, and holding that the delegation provision in Coinbase's arbitration agreement, as stated in its User Agreement, was enforceable); *Berk v. Coinbase, Inc.*, 840 F. App'x 914, 915-16 (9th Cir. 2020) (reversing district court's order denying

Coinbase's motion to compel arbitration, and holding that the plaintiff's claims fell within the scope of Coinbase's arbitration agreement as stated in its User Agreement). Plaintiff could and should have pursued his claims in arbitration. He agreed to arbitrate claims that "arise out of" and "relate to" the User Agreement and Coinbase's services, such as the claims he has asserted. Coinbase respectfully requests that the Court order Plaintiff to do only that which he previously promised to do—submit his dispute to binding arbitration. Coinbase asks the Court to stay this action pursuant to the Federal Arbitration Act (FAA), 9 U.S.C. § 1 *et seq.*

In the alternative, because Plaintiff has failed to allege any non-conclusory allegations to support his claims against Coinbase, in the unlikely event the Court decides that the parties' agreement to arbitrate should not be enforced, Coinbase asks the Court to dismiss Plaintiff's claims against Coinbase pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim.

## BACKGROUND

### I. Plaintiff's Customer Relationship with Coinbase.

Coinbase operates an online platform for buying, selling, and transferring cryptocurrencies that are at the center of Plaintiff's claims. *See* Black Decl. ¶ 4. To access Coinbase's services, prospective users are required to create an account. *Id.* Plaintiff created his account and first affirmatively accepted the Coinbase User Agreement on September 5, 2020 (the "2020 User Agreement"), generating an entry in Coinbase's User Activity Log known as Admin. *Id.* ¶¶ 5-6, Ex. 1. The 2020 User Agreement included an arbitration provision. *Id.*, Ex. 2 § 8.3. The 2020 User Agreement also included a provision that Coinbase "may amend or modify this Agreement by posting on the Coinbase Site or emailing to you the revised Agreement, and the revised Agreement shall be effective at such time." *Id.*, Ex. 2 § 9.5.

Coinbase periodically updates the terms of its User Agreement. On February 28, 2022, Plaintiff affirmatively accepted an updated User Agreement (the "2022 User Agreement"),

generating an Admin entry for that action. *Id.* ¶ 8, Ex. 3. In relevant part, the Preamble on the first page of the 2022 User Agreement directed the user's attention to Appendix 5 that contained the arbitration provision:

> **Dispute Resolution: PLEASE BE AWARE THAT SECTION 7 (CUSTOMER FEEDBACK, QUERIES, COMPLAINTS, AND DISPUTE RESOLUTION) AND APPENDIX 5 OF THIS AGREEMENT, CONTAIN PROVISIONS GOVERNING HOW TO RESOLVE DISPUTES BETWEEN YOU AND COINBASE. AMONG OTHER THINGS, APPENDIX 5 INCLUDES AN AGREEMENT TO ARBITRATE WHICH REQUIRES, WITH LIMITED EXCEPTIONS, THAT ALL DISPUTES BETWEEN YOU AND US SHALL BE RESOLVED BY BINDING AND FINAL ARBITRATION. APPENDIX 5 ALSO CONTAINS A CLASS ACTION AND JURY TRIAL WAIVER. PLEASE READ SECTION 7 AND APPENDIX 5 CAREFULLY.**

*Id.*, Ex. 4, Preamble (all-caps and emphasis in original).

As stated in this warning to users, Appendix 5 of the 2022 User Agreement contained a broad arbitration provision:

> **1.1. Applicability of Arbitration Agreement**. Subject to the terms of this Arbitration Agreement, you and Coinbase agree that any dispute, claim, disagreements arising out of or relating in any way to your access to or use of the Services or of the Coinbase Site, any Communications you receive, any products sold or distributed through the Coinbase Site, the Services, or the User Agreement and prior versions of the User Agreement, including claims and disputes that arose between us before the effective date of these Terms (each, a "Dispute") will be resolved by binding arbitration, rather than in court…

*Id.*, Ex. 4, Appx. 5 § 1.1 (emphasis in original).

The Preamble of the 2022 User Agreement also notified Plaintiff:

> **Amendment of these Terms:** [Coinbase] may amend or modify this [User] Agreement at any time by posting the revised agreement on the Coinbase Site and/or providing a copy to you (a "**Revised Agreement**"). The Revised Agreement shall be effective as of the time it is posted but will not apply retroactively. Your continued use of the Services after the posting of a Revised Agreement constitutes your acceptance of such Revised Agreement. If you do not agree with any such modification, your sole and exclusive remedy is to terminate your use of the Services and close your account.

*Id.*, Ex. 4, Preamble (emphasis in original).

Over the years, Coinbase updated its User Agreement, and most relevant to this motion, updated its User Agreement in 2023. The 2023 User Agreement in effect during the time period at-issue in Plaintiff's Complaint became effective on April 13, 2023. *Id.* ¶ 10, Ex. 5. Coinbase made this updated User Agreement available to its customers on its website and mobile platforms. *Id.* ¶ 10. Plaintiff accessed, transacted in, and used his Coinbase account after the effective date of the 2023 User Agreement. *Id.* ¶ 11.

Similar to the 2022 User Agreement, the Preamble on the first page of the 2023 User Agreement directed the user's attention to Appendix 5 that contained the arbitration provision:

> **<u>Dispute Resolution</u>: PLEASE BE AWARE THAT SECTION 7 (CUSTOMER FEEDBACK, QUERIES, COMPLAINTS, AND DISPUTE RESOLUTION) AND APPENDIX 5 OF THIS AGREEMENT, CONTAIN PROVISIONS GOVERNING HOW TO RESOLVE DISPUTES BETWEEN YOU AND COINBASE. AMONG OTHER THINGS, APPENDIX 5 INCLUDES AN AGREEMENT TO ARBITRATE WHICH REQUIRES, WITH LIMITED EXCEPTIONS, THAT ALL DISPUTES BETWEEN YOU AND US SHALL BE RESOLVED BY BINDING AND FINAL ARBITRATION. APPENDIX 5 ALSO CONTAINS A CLASS ACTION AND JURY TRIAL WAIVER. PLEASE READ SECTION 7 AND APPENDIX 5 CAREFULLY.**

*Id.*, Ex. 5, Preamble (all-caps and emphasis in original).

As stated in this warning to users, Appendix 5 of the 2023 User Agreement included a broad arbitration provision:

> **1.1. Applicability of Arbitration Agreement**. Subject to the terms of this Arbitration Agreement, you and Coinbase agree that any dispute, claim, disagreements arising out of or relating in any way to your access to or use of the Services or of the Coinbase Site, any Communications you receive, any products sold or distributed through the Coinbase Site, the Services, or the User Agreement and prior versions of the User Agreement, including claims and disputes that arose between us before the effective date of these Terms (each, a "Dispute") will be resolved by binding arbitration, rather than in court…

*Id.*, Ex. 5, Appx. 5 § 1.1 (emphasis in original).

Appendix 5 of the 2023 User Agreement also contained a jury trial waiver:

> **1.2. Waiver of Jury Trial. YOU AND COINBASE HEREBY WAIVE ANY CONSTITUTIONAL AND STATUTORY RIGHTS TO SUE IN COURT AND HAVE A TRIAL IN FRONT OF A JUDGE OR A JURY. You and Coinbase are instead electing that all Disputes shall be resolved by arbitration under this Arbitration Agreement, except as specified in the subsection entitled "Applicability of Arbitration Agreement" above. There is no judge or jury in arbitration, and court review of an arbitration award is subject to very limited review.**

*Id.*, Ex. 5, Appx. 5 § 1.2 (all-caps and emphasis in original).

Finally, the 2023 User Agreement contained a delegation provision giving the arbitrator exclusive authority to determine the enforceability of the arbitration agreement.

> **1.6. Authority of Arbitrator**. The arbitrator shall have exclusive authority to resolve any Dispute, including, without limitation, disputes arising out of or related to the interpretation or application of the Arbitration Agreement, including the enforceability, revocability, scope, or validity of the Arbitration Agreement or any portion of the Arbitration Agreement…

*Id.*, Ex. 5, Appx. 5 § 1.6. (emphasis in original).

## II. Plaintiff's Allegations.

Plaintiff appears to allege that Coinbase somehow caused him to lose an unspecified amount of "profits" and "prevent[ed] the financing of [his] company T.Z.P.S. LLC," but provides no factual support for the conclusion. *See* ECF No. 1 ("Compl.") at 11, 14. Exhibit A2 to the Complaint shows an email exchange between Plaintiff and Coinbase on June 22, 2023. *See id.*, Ex. A2. In his email sent at 5:46 p.m. that day, he writes to Coinbase that he is "attempting to purchase Ethereum" to transfer FEG Tokens into his Coinbase Wallet but "the transaction won't complete." *Id.* Coinbase responded to Plaintiff promptly at 5:57 p.m. and again at 8:07 p.m. that day, explaining that Plaintiff's card purchase was declined with the error code "51 – Limit Exceeded," meaning that Plaintiff's *card issuer*, not Coinbase, denied the transaction either because the transaction would exceed the purchase limit set by Plaintiff's bank, or Plaintiff's debit card had already exceeded this purchase limit before this transaction. *Id.*

## LEGAL STANDARD

The FAA, 9 U.S.C. § 1 *et seq.* applies to any "written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction." *See Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 55 (2003) (*per curiam*) (quoting 9 U.S.C. § 2). The term "involving commerce" is the "functional equivalent of the more familiar term 'affecting commerce'[,]" which represents the "broadest permissible exercise of Congress' Commerce Clause power." *Id.* at 56.

Here, the alleged transactions involved interstate commerce because Plaintiff, a resident of New York (Compl. at 2-3), contracted to do business over the internet with Coinbase, a Delaware corporation. The use of internet technologies to purchase or transfer digital currencies satisfies the "involving interstate commerce" requirement. *United States v. Y%20ucel*, 97 F. Supp. 3d 413, 419 (S.D.N.Y. 2015) ("The Internet is an instrumentality of interstate commerce.") (internal quotation marks and citation omitted). Moreover, the 2023 User Agreement expressly provides that the FAA applies. *See* Black Decl. Ex. 5, Appx. 5 § 1.4. Accordingly, the FAA governs the 2023 User Agreement's arbitration clause.

The FAA provides that an agreement to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Supreme Court has emphasized the FAA creates a strong, liberal federal policy that favors arbitration. *See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991). Any ambiguities relating to the scope of the arbitration clause must be resolved in favor of arbitration. *See Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Jr. Univ.*, 489 U.S. 468, 476 (1989). "[T]he [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an

arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original). The role of the courts is "limited to determining two issues: i) whether a valid agreement or obligation to arbitrate exists, and ii) whether one party to the agreement has failed, neglected or refused to arbitrate." *Shaw Grp. Inc. v. Triplefine Int'l Corp.*, 322 F.3d 115, 120 (2d Cir. 2003) (quoting *PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1198 (2d Cir. 1996)).

Plaintiff and Coinbase expressly agreed to delegate to the arbitrator questions related to the interpretation, scope and enforceability of the arbitration agreement. *See* Black Decl., Ex. 5, Appx. 5 § 1.6. Such delegation clauses are separate, antecedent arbitration agreements. *See Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 70 (2010). Where, as here, the parties have "clear[ly] and unmistakabl[y]" delegated questions of arbitrability to the arbitrator, the Court need not resolve any issue of arbitrability. *See Contec Corp. v. Remote Solution, Co.*, 398 F.3d 205, 208 (2d Cir. 2005). The sole question before the Court is the enforceability of the parties' agreement to delegate to the arbitrator "disputes arising out of or related to the interpretation or application of the Arbitration Agreement, including the enforceability, revocability, scope, or validity of the Arbitration Agreement or any portion" thereof. *See* Black Decl., Ex. 5, Appx. 5 § 1.6. "[T]he party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000). It may not satisfy this burden through "general denials of the facts on which the right to arbitration depends … but must submit evidentiary facts showing that there is a dispute of fact to be tried." *Oppenheimer & Co. v. Neidhardt*, 56 F.3d 352, 358 (2d Cir. 1995).

## ARGUMENT

### I. The Court Should Compel Arbitration and Stay the Proceedings Under the FAA.

Plaintiff unmistakably agreed to Coinbase's 2023 User Agreement, which requires his claims be submitted to and resolved by an arbitrator. Because the 2023 User Agreement expressly delegates "gateway" arbitration questions to the arbitrator—including questions about the enforceability, scope, and interpretation of the arbitration agreement itself—this Court need not evaluate the agreement's validity or whether its arbitration clause encompasses Plaintiff's claims. But, even if this Court were to reach those questions here, controlling law requires it to compel arbitration.

#### A. Plaintiff and Coinbase Agreed to Final, Binding Arbitration.

"[A]rbitration is a matter of contract," *AT&T Techs., Inc. v. Commc'n Workers of Am.*, 475 U.S. 643, 648 (1986) (citations omitted), and courts apply "[s]tate law principles of contract formation" to determine whether an agreement to arbitrate exists. *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229-31 (2d Cir. 2016). An arbitration agreement need only be in writing, and no signature by either party is necessary. *See* FAA, 9 U.S.C. § 2; *McAllister v. East*, 611 F. App'x 17, 19 (2d Cir. 2015) ("although the Federal Arbitration Act requires an arbitration clause to be set forth in writing, it does not require that writing to be signed"). Coinbase's User Agreements, including those agreed to by Plaintiff, contain choice of law provisions directing that California law shall apply in any disputes concerning the parties' agreement. *See* Black Decl., Ex. 5 § 9.5. Under both California and New York law, mutual assent, or consent, of the parties is essential to the existence of a contract.[1] *B.D. v. Blizzard Ent., Inc.*, 76 Cal. App. 5th 931, 943 (2022) (quotation omitted); *Fisher v. Aetna Life Ins. Co.*, 32 F.4th 124, 136 (2d Cir. 2022) (citing New York law).

[1] The Court should apply California law pursuant to the applicable User Agreement, but New York law is not substantively different with respect to whether a valid arbitration agreement was formed.

Here, when Plaintiff created his Coinbase account, he affirmatively assented to the 2020 User Agreement, and his action generated an entry in Coinbase's User Activity Log showing the date and time of acceptance as September 5, 2020 at 5:19 p.m. PDT. *See* Black Decl. ¶ 6, Ex.1. This constitutes a classic "clickwrap" contract, "in which website users are required to click on an 'I agree' box after being presented with a list of terms and conditions of use." *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175-76 (9th Cir. 2014). "[C]ourts routinely find [clickwrap agreements] valid and enforceable because the user must affirmatively acknowledge receipt of the terms of the contract." *McLellan v. Fitbit, Inc.*, 2018 WL 1913832, at *2 (N.D. Cal. Jan. 24, 2018); *see also Kamath v. Coinbase, Inc.,* 2024 WL 950163, at *4-5, 9 (N.D. Cal. Mar. 5, 2024) (enforcing clickwrap acceptance of Coinbase's User Agreement and granting motion to compel arbitration); *Flores v. Coinbase, Inc.*, 2023 WL 3564756, at *5 (C.D. Cal. Apr. 6, 2023) (same); *Levin v. Caviar, Inc.*, 146 F. Supp. 3d 1146, 1157 (N.D. Cal. 2015) (finding that contract was formed "when the plaintiff clicked on a button to indicate assent to an agreement in which the terms themselves were accessed by hyperlink") (citation omitted); *Peter v. DoorDash, Inc.*, 445 F. Supp. 3d 580, 582 (N.D. Cal. 2020) (enforcing arbitration agreement where users were presented with hyperlinked terms and notified that, "[b]y tapping Sign Up . . . you agree to our Terms and Conditions"); *Savetsky v. Pre-Paid Legal Services, Inc.*, 2015 WL 604767, at *3 (N.D. Cal. Feb. 12, 2015) ("Because '[b]lanket assent to a form contract is still assent,' courts generally find that clickwrap agreements are enforceable.") (citation omitted); *see also Reznik*, 2024 WL 1055002, at *4 n.4 (enforcing clickwrap acceptance and granting motion to compel, noting that "the form in

---

*See Reznik*, 2024 WL 1055002, at *3 n.2 (applying California law pursuant to a California choice of law provision in Coinbase's 2022 User Agreement and noting that "the choice between New York and California law is not dispositive on the issue of whether a valid arbitration agreement was formed.").

which the Coinbase User Agreement were presented to Coinbase users (either as a 'clickwrap' or 'scrollwrap' agreement) has repeatedly been held sufficient to support a finding of mutual assent") (collecting cases in the Second Circuit); *Sultan v. Coinbase, Inc.*, 354 F. Supp. 3d 156, 162 (E.D.N.Y. 2019) (enforcing clickwrap acceptance and granting motion to compel).

Plaintiff then affirmatively assented to an updated User Agreement in 2022, and his action generated an Admin entry in Coinbase's User Activity Log showing the date and time of acceptance as February 28, 2022 at 4:33 p.m. PST. *See* Black Decl., ¶ 8, Ex. 3. When Plaintiff accepted the 2022 User Agreement, he confirmed that he assented to be bound by that Agreement and all of its terms. *See id.*, Ex. 4, Preamble. These included a change-in-terms provision, which stated that Coinbase could "modify this Agreement at any time by posting a revised [User] Agreement on the Coinbase Site and/or providing a copy to you (a "Revised Agreement"). The Revised Agreement shall be effective as of the time it is posted…" *Id*. The 2022 User Agreement also stated, "Your continued use of the Services after the posting of a Revised Agreement constitutes your acceptance of such Revised Agreement." *Id.* If a user did not agree to be bound by an updated User Agreement, his "sole and exclusive remedy is to terminate [his] use of the Services and clos[ing] [his] account." *Id.*

Coinbase periodically invoked this change-in-terms provision, including on April 13, 2023, when it updated the User Agreement on its website and made a copy available to its customers on its web and mobile platforms. *Id.* ¶ 10, Ex. 5. Plaintiff accessed, transacted in, and did not close his account after Coinbase updated the User Agreement on April 13, 2023. *Id.* ¶ 11. This was sufficient to constitute Plaintiff's consent to the updated version of User Agreement. Courts have routinely held that continued use of an internet-based service is sufficient to evidence assent where the provider clearly notified its users that it reserved the right to modify the terms of service at any

time and informed users that they should stop using the service if they disagreed with the updated terms of service. *See, e.g., Stover v. Experian Holdings, Inc.*, 2018 WL 11462838, at *3 (C.D. Cal. Oct. 31, 2018), *on reconsideration in part*, 2019 WL 13241682 (C.D. Cal. Jan. 30, 2019), *and aff'd*, 978 F.3d 1082 (9th Cir. 2020) (plaintiff agreed to updated terms and conditions by using the defendant's website, when original agreement had a change-in terms provision that the terms "may be updated from time to time," and that "[e]ach time" plaintiff "access[ed] ... the ... Product Website," she would "signify [her] acceptance and agreement, without limitation or qualification, to be bound by the then current agreement"); *DeVries v. Experian Information Solutions, Inc.*, 2017 WL 733096, at *7-8 (N.D. Cal. Feb. 24, 2017) (enforcing updated Terms of Use where prior Terms of Use included a change-in-terms provision); *Matera v. Google Inc.*, 2016 WL 5339806, at *2, 17 (N.D. Cal. Sept. 23, 2016) (holding that "users of the individual Gmail service agreed to [an updated terms of service agreement] upon its posting" where the earlier terms of service stated that modifications would be posted on their website and that if account holders "do not agree to the modified terms for a Service, [they] should discontinue [their] use of that Service"); *Campbell v. eBay, Inc.*, 2014 WL 3950671, at *4 (N.D. Cal. Aug. 11, 2014) (enforcing eBay's updated User Agreement because "eBay's change in policy adding shipping costs to the calculation of Final Value Fees" was based on "contract terms as to which Plaintiff agreed"); *see also Himber v. Live Nation Worldwide, Inc.*, 2018 WL 2304770, at *4-5 (E.D.N.Y. May 21, 2018) (plaintiff assented to the updated terms by using the defendant's website, when original agreement had a change-in terms provision stating that, "[b]y visiting or using the Site, you expressly agree to the Terms, as updated from time to time."). Each of the required conditions is met here.

In short, by assenting to the 2020 and 2022 User Agreements, and continuing to use Coinbase's services, Plaintiff assented to the 2023 User Agreement, which contains a binding

arbitration clause that is substantially similar to those in the previous agreements, thereby agreeing to binding arbitration. *See* Black Decl., Ex. 5, Appx. 5.

### B. The 2023 User Agreement Clearly and Unmistakably Delegates Questions of Arbitrability to the Arbitrator.

Parties to an arbitration agreement "may delegate 'gateway' questions of arbitrability to an arbitrator." *McLellan v. Fitbit, Inc.*, 2017 WL 4551484, at *1 (N.D. Cal. Oct. 11, 2017). Courts will enforce such a delegation provision "when it manifests a clear and unmistakable agreement to arbitrate arbitrability." *Id.; see also Foran v. Nat'l Football League*, 2019 WL 2408030, at *3 (S.D.N.Y. June 7, 2019) ("Where ... contracting parties have evinced a clear an[d] unmistakable intent to delegate threshold arbitrability issues to an arbitrator, a court may not intervene unless [a party] challenge[s] the delegation provision specifically.") (citations and quotations marks omitted). Where "the parties' contract delegates the arbitrability question to an arbitrator, the courts must respect the parties' decision as embodied in the contract." *Henry Schein, Inc. v. Archer and White Sales, Inc.*, 586 U.S. 63, 65 (2019). Even where there is no delegation provision in the arbitration agreement, courts have routinely held that incorporation of an arbitral forum's rules into an arbitration agreement provides "clear and unmistakable evidence that the parties agreed the arbitrator would decide arbitrability." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130-31 (9th Cir. 2015) (citing cases). "Virtually every circuit to have considered the issue has determined that incorporation of the [AAA's] arbitration rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." *Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1074 (9th Cir. 2013). The same rule applies to consumer arbitration provisions. *See, e.g., Gerlach v. Tickmark Inc.*, 2021 WL 3191692, at *4 (N.D. Cal. July 28, 2021) (applying *Brennan* to a consumer arbitration provision).

The 2023 User Agreement contains an express delegation provision that "manifests a clear and unmistakable agreement" to delegate the gateway question of arbitrability to an arbitrator. *McLellan*, 2017 WL 4551484, at *1. It provides that "[t]he arbitrator shall have exclusive authority to resolve any Dispute, including, without limitation, disputes arising out of or related to the interpretation or application of the Arbitration Agreement, including the enforceability, revocability, scope, or validity of the Arbitration Agreement or any portion of the Arbitration Agreement..." Black Decl., Ex. 5 § 1.6. Thus, the parties unmistakably delegated arbitrability questions to an arbitrator, not to this Court, as recently confirmed by the Ninth Circuit Court of Appeals. *See Bielski*, 87 F.4th at 1015 (reversing the district court's denial of Coinbase's motion to compel arbitration; identical delegation provision was not unconscionable and the district court erred in refusing to enforce it). Four other U.S. District Courts likewise have recently upheld substantially similar arbitration provisions and delegation clauses in various versions of Coinbase's User Agreement. *See Flores*, 2023 WL 3564756, at *5 (interpreting Coinbase's 2022 User Agreement, which contains a substantively similar delegation provision, and concluding that "the parties clearly and unmistakably delegated the question of arbitrability to the arbitrator"); *Aggarwal v. Coinbase, Inc.*, 2023 WL 4935003 (N.D. Cal. Aug. 2, 2023), at *6-7 (same); *Pearl v. Coinbase Glob., Inc.*, 2023 WL 1769190, at *3 (N.D. Cal. Feb. 3, 2023) (same); *Donovan v. Coinbase Glob., Inc.*, 649 F. Supp. 3d 946, 954 (N.D. Cal. 2023) (same); *see also Foran*, 2019 WL 2408030, at *2 ("courts have concluded if 'parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator.'").

Moreover, the 2023 User Agreement expressly incorporates the American Arbitration Association's ("AAA's") rules, Black Decl., Ex. 5, Appx. 5 § 1.4, which independently

"constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability." *Flores*, 2023 WL 3564756, at *5; *see also Foran*, 2019 WL 2408030, at *3. Most relevant here, AAA Rule 14(a) states that the arbitrator has "the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." *See* Declaration of Chris LaRocco ("LaRocco Decl."), Ex. 6 at 17. The incorporation of the AAA rules in the 2023 User Agreement thus confirms that the parties intended to delegate gateway arbitrability issues, including the "existence, scope, or validity" of the arbitration provision in the 2023 User Agreement, to the arbitrator. *See id.*

Because the parties have demonstrated their "clear and unmistakable" intention to arbitrate any question as to arbitrability, *Rent-A-Center*, 561 U.S. at 69, n.1, this Court "must respect the parties' decision as embodied" in the 2023 User Agreement and enforce the delegation provision so long as it is not substantively unconscionable. *Henry Schein*, 586 U.S. at 65. As the Supreme Court and Ninth Circuit have recognized, "delegation clauses are essentially severable mini-agreements within agreements to arbitrate." *Holley-Gallegly v. TA Operating, LLC*, 74 F.4th 997, 1001 (9th Cir. July 21, 2023) (citing *Rent-A-Center*, 561 U.S. at 70-73). There is nothing in Coinbase's delegation provision that would render it substantively unconscionable, as several courts have recently held. *See Donovan*, 649 F. Supp. 3d at 954; *Pearl*, 2023 WL 1769190, at *7; *Aggarwal*, 2023 WL 4935003, at *6-7, *Flores*, 2023 WL 3564756, at *7.

### C. The 2023 User Agreement Is Valid, Enforceable, and Encompasses Plaintiff's Claims.

If the Court declines to enforce the delegation clause, even though the delegation clause in the User Agreement is binding and enforceable, it should nevertheless compel arbitration because

(1) the 2023 User Agreement is valid and enforceable, and (2) Plaintiff's claims fall squarely within the scope of that agreement.

**1. The 2023 User Agreement Is Presumptively Valid and Enforceable.**

Arbitration agreements governed by the FAA are presumed valid and enforceable. *See Shearson/Am. Exp., Inc. v. McMahon*, 482 U.S. 220, 226-27 (1987). The FAA therefore mandates enforcement of an arbitration agreement unless grounds exist "at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The plaintiff bears the burden to overcome the presumption of validity by showing that the agreement is unconscionable. *See Green Tree*, 531 U.S. at 91-92. To be "substantively unconscionable," an arbitration "term must be so one-sided as to shock the conscience." *Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Deve. (US), LLC*, 55 Cal. 4th 223, 246 (2012); *see also Isaacs v. OCE Bus. Servs., Inc.*, 968 F. Supp. 2d 564, 569 (S.D.N.Y. 2013) ("An agreement is substantively unconscionable if it is so grossly unreasonable as to be unenforceable according to its literal terms and those contract terms are unreasonably favorable to the party seeking to enforce the contract.") (citing New York law).

Plaintiff cannot meet that burden. At least one S.D.N.Y judge applying California law has recently found a similar Coinbase user agreement to be valid and enforceable. *See Reznik*, 2024 WL 1055002, at *7-8. The plaintiff in *Reznik* argued that the arbitration provision in his agreement was grossly unconscionable and "undermin[es] the principles of transparency and accountability essential to consumer protection." *Id.* at *4. The *Reznik* court rejected the plaintiff's argument. *Id.* at *7-8. The *Reznik* court recognized that under California law, "a finding of unconscionability requires a procedural and a substantive element, the former focusing on oppression or surprise due to unequal bargaining power, the latter on overly harsh or one-sided results." *See id.* at *4 (citing *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 340 (2011) (internal quotation marks omitted)).

First, the *Reznik* court held that the plaintiff did not satisfy the "procedural" element because he did not allege or provide evidence in support that he was in any way "procedurally disadvantaged or surprised" by the arbitration provision. *See Reznik*, 2024 WL 1055002, at *4. Second, the *Reznik* court held that the arbitration provision was not "substantively" unconscionable, because the plaintiff was unable to support his argument that the public interest in transparency around a private business' disputes with its customers can overcome the statutory presumption in favor of enforcing arbitration agreements, and thus does not generate overly harsh or one-sided results. *Id.*

The *Reznik* court also recognized that numerous federal courts have enforced the arbitration provision in Coinbase's user agreements, including most recently the Ninth Circuit. *Id*. (citing *Bielski*, 87 F.4th 1003); *see also Kattula v. Coinbase Glob., Inc.*, 2023 WL 4373385, at *5 (N.D. Ga. July 6, 2023) (Coinbase's arbitration provision did "not lack mutuality" because it provided that "all disputes between the user and Coinbase 'will be resolved by binding arbitration.'"); *Donovan*, 649 F. Supp. 3d at 954 (enforcing arbitration and compelling arbitration); *Alfia v. Coinbase Glob., Inc.*, 2022 WL 3205036, at *3-4 (N.D. Cal. July 22, 2022) ("The arbitration provision is not unconscionable and is therefore enforceable."); *Tarverdiyeva v. Coinbase Global, Inc.*, 2021 WL 4527960, at *2 (M.D. Fla. Sept. 8, 2021) ("a valid agreement to arbitrate exists in this matter by way of the User Agreement").[2] The result should be the same here. The arbitration clause in the 2023 User Agreement, which is materially identical to the agreement addressed in *Reznik*, binds both users and Coinbase to arbitrate their claims, and, further, stipulates that both

[2] State courts have also required arbitration of claims against Coinbase under the User Agreement. *See, e.g., Mahmoud v. Coinbase, Inc.*, 2022 WL 18799657, at *1 (Cal. Sup. Ct., Oct. 19, 2022) (enforcing arbitration and compelling arbitration); *Pierre v. Coinbase, Inc.*, 2021 WL 1538015, at *3-4 (Sup. Ct., N.Y. Cnty. Apr. 14, 2021) ("The User Agreement entered into between plaintiff and defendant is not only broad, but it also creates a presumption of arbitrability.").

the user "and Coinbase are each waiving the right to a trial by jury and the right to participate in a class action." Black Decl., Ex. 5, Appx. 5 § 1.2. The provision is thus not "one-sided."

**2. Plaintiff's Claims Fall Within the Scope of the Arbitration Clauses.**

Under the 2023 User Agreement, Plaintiff and Coinbase agreed broadly to arbitrate any claims that either arise out of or "relat[e] to" the 2023 User Agreement or the "Coinbase Services," which are defined broadly as "the services provided by Coinbase…" Black Decl., Ex. 5, Preamble & Appx. 5 § 1.1. "An agreement that requires the parties to arbitrate 'any dispute arising out of or relating to' an agreement is intended 'to reach all aspects of their relationship.'" *Neurosigma, Inc. v. De Salles*, 2014 WL 12803168, at *3 (C.D. Cal. Jan. 31, 2014) (quoting *Schoenduve Corp. v. Lucent Techs., Inc.*, 442 F.3d 727, 732 (9th Cir. 2006)); *see also Clarendon Nat'l Ins. Co. v. Lan*, 152 F. Supp. 2d 506, 514 (S.D.N.Y. 2001) ("The strong policy in favor of arbitration is even stronger where the arbitration clause itself is a broad clause that refers to arbitration of 'all disputes arising out of an agreement.'").

Here, all of Plaintiff's purported claims fall within the scope of the arbitration clause in the 2023 User Agreement because they arise out of or relate to Coinbase's alleged conduct in connection with its provision of services to Plaintiff. For example, Plaintiff seeks preliminary injunctive relief regarding an alleged contract with Coinbase, and his other claims are also related to that alleged contract. Nothing in the Complaint suggests that any of Plaintiff's allegations concern Coinbase conduct that would not be covered by the User Agreement, and this Court should compel individual arbitration of all of Plaintiff's claims.

**D. Plaintiff Would Still be Required to Arbitrate His Claims Under the 2020 and 2022 User Agreements.**

Coinbase's motion should be resolved by reference to the User Agreement effective April 13, 2023, but the result would be the same under the 2020 User Agreement because (1) Plaintiff

assented to the agreement by continuing to use Coinbase Services after being informed of the update; (2) the agreement is enforceable; and (3) Plaintiff's claims arise out of or relate to Coinbase Services and the applicable User Agreements. When Plaintiff accepted the 2020 and the 2022 User Agreements, he confirmed that he assented to be bound by those agreements and all of their terms. *See* Black Decl., Exs. 1, 3. The 2020 and 2022 User Agreements each included a change-in-terms provision, which permitted Coinbase to "amend or modify this [User] Agreement at any time by posting the revised agreement on the Coinbase Site and/or providing a copy to [Plaintiff]." *Id.*, Ex. 2 §§ 1.2, 9.5; *id.*, Ex. 4 at 1. Plaintiff's "sole and exclusive remedy" if he did "not agree with any such modification" was "to terminate [his] use of the Services and close [his] account." *Id.*, Ex. 2 §§ 1.2, 9.5; *id.*, Ex. 4 at 1. By accepting the 2020 and the 2022 User Agreements, he agreed not only to the change-in-terms provisions, but also to the arbitration provisions in the 2020 and the 2022 User Agreements. *Id.*, Ex. 2 § 8.3; *id.*, Ex. 4, Appx. 5.

Furthermore, even if Plaintiff were to argue that he was bound by either the 2020 User Agreement or the 2022 User Agreement instead of the 2023 User Agreement, the 2020 and 2022 User Agreements each include arbitration provisions that cover the same disputes and issues as the 2023 User Agreement, and delegate questions of arbitrability to the AAA. *See* Black Decl., Ex. 2, § 8.2; *id.*, Ex 4, Appx. 5. For the same reasons discussed above, Plaintiff's claims would still be subject to arbitration under any of these three User Agreements. *See supra* Sections I.A-C.

**E. This Action Should be Stayed Pending Completion of Arbitration.**

This Court should stay this lawsuit pending the outcome of the arbitration. When a dispute covered under an arbitration clause is brought in federal court, the court must stay the action upon application of a party. *See* 9 U.S.C. § 3. The district court has no discretion to deny a stay. *See, e.g., Reznik*, 2024 WL 1055002, at *4 (quoting *Katz v. Cellco P'ship*, 794 F.3d 341, 347 (2d Cir. 2015)) ("The FAA 'mandate[s] a stay of proceedings when all of the claims in an action have been

referred to arbitration and a stay requested.'"). Accordingly, Coinbase requests that the Court stay this action under the FAA.[3]

**II. In the Alternative, the Court Should Dismiss This Action for Failure to State a Claim Under Fed. R. Civ. P. 12(b)(6).**

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of the complaint. *Aleph Towers, LLC v. Ambit Texas, LLC*, 2013 WL 4517278, at *5 (E.D.N.Y. Aug. 23, 2013). Although *pro se* complaints may be construed liberally, "[d]ismissal of a *pro se* complaint is nevertheless appropriate where a plaintiff has clearly failed to meet minimum pleading requirements." *Carvel v. Ross*, 2011 WL 856283, at *8 (S.D.N.Y. Feb. 16, 2011). "The Court may not read into *pro se* submissions claims inconsistent with the *pro se* litigant's allegations, see or arguments that the submissions themselves do not suggest." *Cano v. SEIU Loc. 32BJ*, 2021 WL 4480274, at *4 (S.D.N.Y. Sept. 30, 2021) (internal citations and quotation marks omitted). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action," or "naked assertions devoid of further factual enhancement" will not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal alternations and quotation marks omitted).

Here, Plaintiff's allegations regarding Coinbase are limited to: (1) "I hereby affirm that the defendants have utilized their political power and influence to sabotage my newly established company T.Z.P.S. LLC's operations which has caused me loss of salary and fringe benefits namely preventing the financing of my company T.Z.P.S. LLC established on July 19th 2022, via Coinbase and other crypto exchange platforms due to the release of said secret information released during

---

[3] Plaintiff appears to argue that Coinbase's motion to compel arbitration should be denied because his claims against Coinbase fall under an exception for trade secrets in the User Agreement's arbitration provision. *See* ECF No. 23, Plaintiff's Letter Response to Partner Chris LaRocco for Defendants Coinbase, at 2. This argument holds no water. Plaintiff alleges no facts that Coinbase infringed or otherwise misused his trade secrets, if any. *See* Black Decl., Ex. 5, Appx. 5 § 1.1 ("you or Coinbase may seek equitable relief in court for infringement or other misuse of intellectual property rights (such as … trade secrets…).").

the initial proceeding civil action 1:21 cv 03314." (Compl. at 11); (2) "I hereby assert a claim of misappropriation of trade secrets against defendants … Coinbase pursuant to 18 USC 1836 (b)(1) as well as [s]tate law tort claims for unjust entertainment false advertising and breach of fiduciary duty." (*id.*); and (3) "Preliminary Injunctive Relief against Coinbase to rescind the original smart contract, loss of profits and use of FEG token smart contract…" (*id.* at 14).

Plaintiff's conclusory and illogical assertions do not plausibly support his claims or requests against Coinbase.[4] First, this Court must dismiss Plaintiff's "claim of misappropriation of trade secrets" pursuant to 18 U.S.C. § 1836(b)(1). *Id.* at 11. "For a claim under the federal Defend Trade Secrets Act ("DTSA") [18 U.S.C. § 1836(b)(1)], [p]laintiffs must demonstrate that (1) they possessed a trade secret, and (2) [d]efendants misappropriated that trade secret. *Town & Country Linen Corp. v. Ingenious Designs LLC*, 556 F. Supp. 3d 222, 254 (S.D.N.Y. 2021). Plaintiff fails to allege any facts that would satisfy these two elements.

Second, this Court must dismiss Plaintiff's "unjust entertainment" claim as this is not a cognizable claim. Compl. at 11. If Plaintiff meant to allege an unjust enrichment claim, this claim also fails. "Unjust enrichment is a quasi-contractual remedy that the law provides where a contractual relationship has legally failed." *Aleph Towers*, 2013 WL 4517278, at *7 (internal citations and quotation marks omitted). If Plaintiff is seeking to recover under the 2023 User

[4]Plaintiff's claims should also be dismissed because in a prior action, Case No. 1:21-cv-03314 ("Prior Action"), he filed a letter to the court alleging claims against Coinbase similar to the claims he alleges in this action, which the court found were "frivolous," despite the fact that Coinbase was not a named party in that action. *See* Prior Action, ECF No. 128 (Plaintiff's letter to the court requesting emergency relief as to the "misappropriated digital assets pertaining to Coinbase's User Agreement … concerning the full value of over 11.83 billion FEG Tokens and the return of equivalent market value of said tokens…"); *id.*, ECF No. 132 at 2, 8-10 (issuing a report and recommendation granting the defendants' request for a filing restriction to be imposed on Plaintiff because Plaintiff's filings, including Plaintiff's letter to the court alleging claims against Coinbase, were "frivolous or failed to follow the proper procedures"); *id.*, ECF No. 143 (adopting the report and recommendation contained in ECF No. 132 in full).

Agreement to contract for services with Coinbase, Plaintiff may not seek recovery in quasi contract. Further, "[t]he elements of a cause of action to recover for unjust enrichment are (1) the defendant was enriched, (2) at the plaintiff's expense, and (3) that it is against equity and good conscience to permit the defendant to retain what is sought to be recovered." *Reese v. Triborough Bridge & Tunnel Auth.*, 91 F.4th 582, 594 (2d Cir. 2024). Plaintiff fails to allege any facts that would satisfy these three elements.

Third, this Court must dismiss Plaintiff's false advertising claim. Compl. at 11. To establish a false advertising claim, "a plaintiff must demonstrate that: (1) the challenged transaction was consumer-oriented, (2) defendant(s) engaged in deceptive acts or practices, or in false advertising, and (3) plaintiff was injured by reason of defendant's deceptive or misleading conduct." *M & T Bank Corp. v. LaSalle Bank Nat. Ass'n*, 852 F. Supp. 2d 324, 340 (W.D.N.Y. 2012) (internal citations and quotations marks omitted). Plaintiff fails to allege any facts that would satisfy these three elements.

Fourth, this Court must dismiss Plaintiff's breach of fiduciary duty claim. Compl. at 11. "To state a claim for a breach of fiduciary duty, a plaintiff must allege: (1) the existence of a fiduciary relationship, (2) misconduct by the defendant, and (3) damages directly caused by the defendant's misconduct." *Aleph Towers*, 2013 WL 4517278, at *8 (internal citations and quotation marks omitted). It is well established that a conventional business relationship, without more, is insufficient to create a fiduciary relationship. *Id.* Plaintiff fails to allege any facts that would satisfy these three elements.

Fifth, this Court should deny Plaintiff's request for preliminary injunctive relief against Coinbase to "rescind the original smart contract, loss of profits and use of FEG token smart contract." Compl. at 14. To prevail on a motion for a preliminary injunction, the plaintiff is

required to demonstrate "(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *UBS Fin. Servs., Inc. v. W. Virginia Univ. Hosps., Inc.*, 660 F.3d 643, 648 (2d Cir. 2011). Plaintiff fails to allege any facts demonstrating an actual injury or irreparable harm for preliminary injunctive relief.

## CONCLUSION

For the reasons set forth herein, Coinbase respectfully requests that the Court (1) compel Plaintiff to arbitrate his claims and stay this action pending completion of the arbitration; or (2) in the alternative, dismiss this action against Coinbase for failure to state a claim.

Dated: July 9, 2024

Respectfully submitted,

**BRYAN CAVE LEIGHTON PAISNER LLP**

By: */s/ Chris M. LaRocco*
Chris M. LaRocco
1290 Avenue of the Americas
New York, New York 10104
Tel: (212) 541-3163
Fax: (212) 541-4630
Email: chris.larocco@bclplaw.com

Ashley Hyun-Jeong Kim
120 Broadway, Suite 300
Santa Monica, CA 90401-2386
Phone: (310) 576-2113
Fax: (310) 576-2200
Email: ashley.kim@bclplaw.com

*Counsel for Defendant Coinbase, Inc.*

**CERTIFICATE OF SERVICE**

I, Chris M. LaRocco, one of the attorneys for Coinbase, Inc., certify that on July 9, 2024, I caused to be electronically filed the foregoing document with the Clerk of the Court for the United States District Court, Southern District of New York using the CM/ECF system and served a copy of same upon all counsel of record and Plaintiff Bernard T. Anderson Bey via the Court's electronic filing system.

By: *<u>/s/ Chris M. LaRocco</u>*
Chris M. LaRocco