UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BERNADRD T. ANDERSON BEY,<br><br>                          Plaintiff,<br><br>   -against-<br><br>ROC NATION, LLC, et al.,<br><br>                          Defendants. | 1:24-cv-02295 (ALC) |

**DEFENDANT RENAISSANCE ECONOMIC DEVELOPMENT CORPORATION'S
MEMORANDUM OF LAW IN OPPOSITION TO
<u>PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT</u>**

Martin R. West II
Blaise U. Chow
**KENNEDYS CMK LLP**
570 Lexington Avenue – 8th Floor
New York, New York 10022
Tel: (212) 252-0004
Email: martin.west@kennedyslaw.com

*Attorneys for Defendant
Renaissance Economic
Development Corporation*

# **TABLE OF CONTENTS**

Page No.

PRELIMINARY STATEMENT ................................................................................................... 1

BACKGROUND ............................................................................................................................ 2

   1. REDC ................................................................................................................................ 2
   2. PLAINTIFF'S LOAN APPLICATION ..................................................................................... 3
   3. SERVICE OF PLAINTIFF'S LAWSUIT ................................................................................... 4

PROCEDURAL HISTORY ............................................................................................................ 5

   1. PLAINTIFF'S PLEADINGS IN THIS ACTION......………………….....…..……………6

ARGUMENT .................................................................................................................................. 8

   1. This Court Lacks Jurisdiction over REDC Because Service Was Improper……………….8
   2. Plaintiff's Motion Should Be Denied for Failure to Obtain an Entry of Default…………10
   3. Assuming *Argunendo* that REDC Is in Default, Good Cause Exists for Vacating
       the Default………………………………………………………………………………11
       3.1    REDC's untimely appearance was not willful…………………………………11
       3.2    REDC has meritorious defenses to Plaintiff's claims……………………….…13
       3.3    Plaintiff has not demonstrated prejudice…………………………………….…15

CONCLUSION............................................................................................................................. 16

# **TABLE OF AUTHORITIES**

Page(s)

Cases

*Am. All. Ins. Co. v. Eagle Ins. Co.*,
   92 F.3d 57 (2d Cir. 1996) .................................................................................................11, 12, 13
*Anilina Fabrique de Colorants v. Aakash Chem. and Dyestuffs, Inc.*,
   856 F.2d 873 (7th Cir. 1988) ..................................................................................................... 13
*Bar-Levy v. Mitchell*,
   No. 22-cv-3408 (CS), 2022 WL 14746399 (S.D.N.Y. Oct. 25, 2022) ..................................... 13
*Bibliotechnical Athenaeum v. Am. Univ. of Beirut*,
   527 F. Supp. 3d 625 (S.D.N.Y. 2021)....................................................................................... 13
*Bricklayers & Allied Craftworkers Loc. 2, Albany, N.Y. Pension Fund v. Moulton Masonry &
   Const., LLC*,
   779 F.3d 182 (2d Cir. 2015) ......................................................................................................11
*Crawford v. US Sec. Assocs.*,
   No. 19CIV105PGGRWL, 2020 WL 61171 (S.D.N.Y. Jan. 6, 2020) ......................................... 9
*Davidson v. Citicorp/Citibank, N.A.*,
   No. 90 CIV. 0941 (PKL), 1990 WL 96991 (S.D.N.Y. July 2, 1990)........................................ 14
*Davis v. Castleberry*,
   No. 03-CV-6501L, 2004 WL 1737368 (W.D.N.Y. Aug. 2, 2004)............................................ 10
ECF No.,
   83 p. ............................................................................................................................................ 7
*Enron Oil Corp. v. Diakuhara*,
   10 F.3d 90 (2d Cir. 1993) ..........................................................................................................11
*HB v. Monroe Woodbury Cent. Sch. Dist.*, No. 11–CV–5881 (CS),
   2012 WL 4477552 (S.D.N.Y. Sept. 27, 2012).......................................................................... 13
*In re FKF 3, LLC*,
   501 B.R. 491 (S.D.N.Y. 2013) ..................................................................................................11
*Lliviganay v. Cipriani 110 LLC*,
   No. 09-CV-0737 (LAK), 2009 WL 1044606 (S.D.N.Y. Apr. 14, 2009) .................................... 8
*Lopez v. Bay Shore Union Free Sch. Dist.*,
   668 F. Supp. 2d 406 (E.D.N.Y. 2009) ................................................................................. 13, 14
*Meehan v. Snow*,
   652 F.2d 274 (2d Cir. 1981) ......................................................................................................11
*O'Callaghan v. Sifre*,
   242 F.R.D. 69 (S.D.N.Y. 2007) ................................................................................................ 15
Plaintiff commenced this lawsuit on March 27, 2024, against "Renaissance Community
   Development Company."  (ECF No.,
   1 p. 1......................................................................................................................................... 6
*River Glen Assocs., Ltd. v. Merrill Lynch Credit Corp.*,
   295 A.D.2d 274, 743 N.Y.S.2d 870 (2002) ............................................................................. 14
*Robertson v. Doe*,
   No. 05 Civ. 7046(LAP), 2008 WL 2519894 (S.D.N.Y. June 19, 2008).................................. 10
*S.E.C. v. McNulty*,
   137 F.3d 732 (2d Cir. 1998) ......................................................................................................11

*Sheldon v. Plot Commerce*,
   No. 15-CV-5885 (CBA) (CLP), 2016 WL 5107072 (E.D.N.Y. Aug. 26, 2016) .......................... 8
*Vanek v. Samsung EMS Co. Ltd*,
   No. 23 CIV. 03127 (JGK) (RFT), 2024 WL 5245597 (S.D.N.Y. Oct. 15, 2024) ........................ 8
*W.B. David & Co. v. De Beers Centenary AG*,
   507 Fed. App'x 67 (2d Cir. 2013) ................................................................................................11

Statutes

42 U.S.C. 2000(d) ............................................................................................................................ 6
42 U.S.C. § 1981 ........................................................................................................................... 14
42 U.S.C. § 2000d .......................................................................................................................... 13

Rules

Fed. R. Civ. P. 4(c)(2) ................................................................................................................... 10
Fed. R. Civ. P. 4(h)(1)(A) ............................................................................................................... 9
Fed. R. Civ. P. 4(h)(1)(B) ............................................................................................................... 9
Fed. R. Civ. P. 55(a) ...................................................................................................................... 10
Fed. R. Civ. P. 55(b)(2) ................................................................................................................. 10
Fed R. Civ. P. 55(c) ...........................................................................................................11, 12, 13
Federal Rule of Civil Procedure 4(h) ............................................................................................. 9
Federal Rule of Civil Procedure 55 .........................................................................................10, 11
N.Y. C.P.L.R. 311(a)(1) .................................................................................................................. 9

Defendant Renaissance Economic Development Corporation ("REDC") submits this memorandum of law in opposition to Plaintiff's motion for a default judgment against REDC.

**PRELIMINARY STATEMENT**

*Pro se* Plaintiff, Bernard Bey ("Plaintiff") seeks a default judgment against REDC for allegedly failing to respond to Plaintiff's Complaint.

Plaintiff's argument however has many flaws. First, proper service on REDC was never made and therefore this Court lacks jurisdiction over REDC. Indeed, Plaintiff's Certificate of Service indicates that the summons and complaint, which misnamed REDC, was only served on REDC's receptionist who was not authorized to accept service of process.

Second, Plaintiff has failed to obtain an entry of default before seeking a default judgment. The Clerk of the Court repeatedly rejected Plaintiff's request for the entry of default due to numerous procedural errors with Plaintiff's application, including the service issues identified above.

Third, assuming for the sake of argument that REDC is in default, good cause exists to vacate the default. To this end, REDC's default was not willful. Despite investigating the issue, REDC cannot locate, in its files, any indication that it received the original summons and complaint, thus, any oversight was, at worst, inadvertent. And, once REDC became aware of this lawsuit it retained counsel that timely responded to Plaintiff's Amended Complaint (which was also improperly served).

REDC also has a meritorious defense to Plaintiff's claim—put simply REDC denied Plaintiff's loan request on behalf of his company because REDC cannot lend to out-of-state companies and Plaintiff's company was incorporated in Delaware. The denial had nothing to do with Plaintiff's race or national origin.

1

Additionally, Plaintiff has not offered any argument that he would be prejudiced by the Court vacating any alleged default. Indeed, this lawsuit is still in the early stages with co-defendants' motions to dismiss still being briefed, no discovery has taken place, and the Plaintiff himself has requested a stay of the litigation. Plaintiff also bears responsibility for any delay in REDC's appearance as he repeatedly failed to serve REDC with his requests for a default.

In sum, there are numerous independent bases that warrant the denial of Plaintiff's motion.

## BACKGROUND

### 1.     REDC

REDC is a not-for-profit Community Development Financial Institution ("CDFI"). (Lee Dec. ¶ 3.)[1]  Generally speaking, CDIFs are financial institutions that provide financial services to underserved communities. Along these lines, REDC's mission is to transform "low-to-moderate income and immigrant communities in the New York Metro Area by providing low-interest small business loans, training, and counselling services." (Lee Dec. ¶ 4.)

Most of the funding that is used to provide these loans comes from various government programs, such as the United States Small Business Administration's ("SBA") initiatives, the United States Department of Treasury's Community Development Financial Institutions Fund, as well as smaller, state and local level programs such as the NYC Small Business Opportunity Fund. (Lee Dec. ¶ 5.) And, not surprisingly, these programs have certain rules and regulations that govern how the funding can be administered. (Lee Dec. ¶ 6.)

Relevant here, because CDFIs are supposed to be community-focused, there are often geographic restrictions in their funding arrangements. (Lee Dec. ¶ 7.) Practically speaking this

---

[1] Citations to "Lee Dec." refer to the Declaration of Jessie Lee, REDC's Managing Director, dated January 24, 2025 and submitted in opposition to Plaintiff's motion for a default judgment.

means that REDC can only lend to New York (and recently, New Jersey) based individuals and entities. (Lee Dec. ¶ 8.)

Additionally, REDC has its own underwriting criteria for its loans. (Lee Dec. ¶ 9.) One of those criteria is the applicant's ability to repay the loan, which is critically important for REDC because one of the considerations for government funding is the default percentage of loans issues by REDC. (Lee Dec. ¶ 10.) Thus, if REDC issues too many loans to individuals or entities that default on those loans, it risks losing funding. (Lee Dec. ¶ 11.)

### 2. Plaintiff's Loan Application

Plaintiff contacted REDC in September of 2022, to discuss a potential loan for his company T.Z.P.S LLC under the Community Advantage Program through SBA. (*See* Lee Dec. ¶ 12-13, Ex. 1.) Shortly afterwards, REDC repeatedly explained to Plaintiff that his business needed to be incorporated in New York to qualify for this type of loan through REDC. (*See* Lee Dec. ¶ 14, Ex. 1.) Indeed, this was explained to Plaintiff at least four times between September 2022 and December 2022. (*See* Lee Dec. ¶ 15, Ex. 1.)

Despite repeatedly being told that REDC would not be able to provide a loan for a Delaware corporation, Plaintiff continued with his application. (*See* Lee Dec. ¶ 16 Ex. 1.) Further evidence of this is also shows in the emails that Plaintiff submitted in support of his original motion for a default judgment:

- On Dec. 1, 2022, Amy Lam emailed Plaintiff a list of documents required to move forward, the first item on the list stated: 1) Business Registration a) Articles of Organization in the State of New York, b) Filing Receipt, c) operating agreement to verify ownership structure (MUST be in the State of New York)
- Later that day, following a phone call, Ms. Lam wrote back to Plaintiff, stating "We need your Article of Organization by the State of New York . . . . Please hold off on all documents until your business is registered in the State of New York."

3

- The same afternoon, after Plaintiff disputed this requirement, Ms. Lam wrote back to Plaintiff asking "Do you have the articles of organization and the filing receipt by New York State?"

- She followed up shortly afterwards explaining "We can only start your loan application process if you have the Articles of Organization and the filing receipts by New York State."

- After more argument from Plaintiff, Ms. Lam wrote back on December 2, 2022, reiterating what she said in a prior email "Please do not email us any documentation at this point. We can only start your loan application process if you have the Articles of Organization and the filing receipts by New York State. This is part of the required documents in order to start the loan application process."

(ECF No. 32-1, pp. 2-5.)

Ultimately, Plaintiff's continued with his loan application on behalf of his company and it was denied for exactly the reasons that he had been warned about--his company was not incorporated in New York (and Plaintiff's financials indicated that he lacked the ability to repay the loan). (*See* Lee Dec. ¶ 17, Ex. 1.) To be expressly clear, the denial of Plaintiff's loan application had nothing to do with his race or national origin. (*See* Lee Dec. ¶ 17.)

1. Service of Plaintiff's Lawsuit

REDC was unaware of Plaintiff's lawsuit against it until November 12, 2024, when Plaintiff himself delivered a package of documents at REDC's office. (Lee Dec. ¶ 18.) Once REDC became aware of Plaintiff's lawsuit it, it promptly retained counsel. (Lee Dec. ¶ 19.)

After retaining counsel, REDC learned that Plaintiff was contending that he served REDC in April of 2024 by having the Sheriff of the City of New York leave the summons and complaint with "Mrs. Sue," REDC's receptionist. (Lee Dec. ¶ 20.)

Ms. Lee then undertook an investigation into the alleged service in April of 2024 but was unable to locate any documents allegedly served at that time. (Lee Dec. ¶ 21.) Ms. Lee spoke with REDC's receptionist Xiuhong "Sue" Zeng to see if she had any recollection of receiving the

4

summons and complaint—Ms. Zeng did not. (Lee Dec. ¶ 23; Zeng Dec. ¶ 4.)[2] Ms. Lee then sought to review security footage from REDC's cameras to confirm whether the documents were, in fact, left with Ms. Zeng, and what, if anything, was done with them afterwards, but by this point in time, the older security footage had been deleted due to its age. (Lee Dec. ¶ 24.)

REDC had never authorized Ms. Zeng to accept service of process on behalf of REDC. (Lee Dec. ¶ 25; Zeng Dec. ¶ 3.) Furthermore, Ms. Zeng's native languages are Mandarin and Cantonese not English, so it is questionable as to whether Ms. Zeng would have understood what was being served, if it was, in fact. served.[3] (Lee Dec ¶ 26, Zen Dec. ¶ 6.)

REDC also frequently receives documents for other similarly named entities, including Renaissance Community Development Corp. Center, which is located in New Jersey and Renaissance Entrepreneurship Center, which is located in California. (Lee Dec ¶ 27.) It is conceivable that a REDC employee believed that the summons and complaint did not relate to REDC because the name was incorrect and therefore did not address them appropriately. (Lee Decs. ¶ 28.)

Prior to November 2024, REDC did not receive notice of Plaintiff's request for entry of a default or his motion for a default judgment. (Lee Dec. ¶ 29.) REDC never received a copy of Plaintiff's complaint in the mail. (Lee Dec. ¶ 30.)

## PROCEDURAL HISTORY

2.   **Plaintiff's Pleadings in This Action**

---

[2] Citations to "Zeng Dec." refer to the Declaration of Xiuhong "Sue" Zeng, REDC's receptionist, dated January 24, 2025 and submitted in opposition to Plaintiff's motion for a default judgment

[3] REDC's office is located in Chinatown and the predominant amount of walk-ins to the office are native Mandarin and Cantonese speakers.

Without leave of Court,[4] Plaintiff commenced this lawsuit on March 27, 2024, against "Renaissance Community Development Company." (ECF No. 1 p. 1.) Plaintiff's original complaint alleges various causes of action against defendants Roc Nation LLC, Mr. Sean C. Carter P.K.A. Jay-Z; Live Nation Entertainment Inc., Coinbase, and NYCHA. (*See id.*) The allegations against REDC were extremely narrow: "I am asserting a claim against Renaissance Economic Development Corporation pursuant to 42 U.S.C. 2000(d) prohibition against exclusion from participation in denial of benefits of, and discrimination under federally assisted programs on grounds of race color or national origin." (ECF No. 1, p. 11.)

Plaintiff alleges to have served REDC, incorrectly named and identified in the Certificate of Service as "Renaissance Community Development Company" through service by the Sheriff of the City of New York on April 5, 2024. (ECF No. 20.) The Certificate of Service indicates that the Summons and Complaint was left with "Mrs. SUE" "who stated that he/she was FRONT DESK/RECEPTIONIST an agent authorized to accept service of legal process." (*Id.*)

On June 28, 2024, Plaintiff filed a motion for default judgment against REDC. (ECF No. 32.) Plaintiff does not claim to have served this motion on REDC when he filed it. (ECF No. 32.) There is also no indication that Plaintiff sought leave to file this motion as required in the anti-filing injunction.

On July 30 and July 31, 2024, Plaintiff filed an "Amended Complaint" and an "Amended Complaint with Additional Exhibits." (ECF Nos 57-58.)[5] Amongst other things, the Amended Complaint corrected REDC's name, properly naming it this time. Accordingly, the Court

---

[4] As required by the anti-filing injunction issued in another lawsuit commenced by Plaintiff under docket number 1:21-cv-03315, ECF No. 132.

[5] Per the Court's Order dated December 3, 2024, the Court granted Plaintiff's request "to withdraw the amended complaint at ECF No. 58 and submit the exhibits in ECF No. 111 as incorporated by reference to ECF No. 57." (ECF No. 115.)

terminated Renaissance Community Development Company as a defendant on the docket on July 30, 2024.

Then, on October 21, 2024, Plaintiff, for the first time sought a Clerk's Certificate of Default. (ECF Nos. 74-75.) The Clerk properly denied this request on the basis that the "second amended complaint was not served." (October 21, 2024 Docket Entry.) Additionally, Plaintiff never served the request for the default on REDC as required under Local Civil Rule 55.1.

Plaintiff then repeatedly attempted to obtain a Certificate of Default against REDC, which was repeatedly denied for several reasons including that: "there is no proof of service on the docket for the complaint or amended complaint for the defendant you are seeking default against; the proposed clerk's certificate of default does not cite the service of the amended complaint." (*See* ECF Nos. 82-93, November 6, 2024 Docket Entry.)

On November 12, 2024, Plaintiff appears to have attempted to serve REDC with the Amended Complaint. (ECF No. 86.)

However, that Proof of Service contains a litany of deficiencies. First and foremost, Plaintiff served REDC with the summons, complaint, proposed certificate of default, and related documents himself. (*Id.*) Second, Plaintiff merely "edited" the original summons issued by the Court on March 27, 2024 against Renaissance Community Development Company by handwriting "Amended," striking out the improper entity name, rewriting REDC's proper name and initially the changes.[6]

---

[6] It is all the more confusing that Plaintiff only "served" the "Amended" summons on REDC because the Court had issued another summons for REDC properly on October 18, 2024. (*See* October 18, 2024; ECF No. 83 p. 7.) However, this summons was not contained in the documents that Plaintiff provided to REDC.

Plaintiff continued to file various letters and "legal objections" disputing the Clerk's Office's refusal to enter a default against REDC. (ECF Nos. 82-93, 108.)

Having been alerted to the lawsuit, REDC retained the undersigned counsel who timely filed a pre-motion letter to dismiss Plaintiff's Amended Complaint. (ECF No. 112.) The Court then held a conference on December 3, 2024 to address various issues, including Plaintiff's request for a default judgment against REDC.[7] The Court denied Plaintiff's initial motion for a default judgment without prejudice for Plaintiff to renew and Plaintiff filed the present motion.

## ARGUMENT

**1.     This Court Lacks Jurisdiction over REDC Because Service Was Improper**

First and foremost, "[p]ersonal jurisdiction is a necessary prerequisite to entry of a default judgment." *Sheldon v. Plot Commerce*, No. 15-CV-5885 (CBA) (CLP), 2016 WL 5107072, at *6 (E.D.N.Y. Aug. 26, 2016) *report and recommendation adopted*, 2016 WL 5107058 (E.D.N.Y. Sept. 19, 2016). Accordingly, "lack of proof of proper service 'is an independent obstacle to a default judgment.'" *Vanek v. Samsung EMS Co. Ltd*, No. 23 CIV. 03127 (JGK) (RFT), 2024 WL 5245597, at *7 (S.D.N.Y. Oct. 15, 2024), *report and recommendation adopted as modified sub nom. Vanek v. Samsung EMS Co.*, No. 23-CV-3127 (JGK), 2024 WL 4894344 (S.D.N.Y. Nov. 26, 2024) (quoting *Lliviganay v. Cipriani 110 LLC*, No. 09-CV-0737 (LAK), 2009 WL 1044606, at *1 (S.D.N.Y. Apr. 14, 2009)).

Federal Rule of Civil Procedure 4(h) governs service over a corporation, partnership, or association. Relevant here, it allows for service

---

[7] At the conference, the undersigned advised that he would be willing to accept service of process on behalf of REDC to forego the dispute regarding the service of process deficiencies and move forward in the litigation but Plaintiff rejected this proposal.

>by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and—if the agent is one authorized by statute and the statute so requires—by also mailing a copy of each to the defendant . . . .

Fed. R. Civ. P. 4(h)(1)(B).

Service may also be made under New York law (Fed. R. Civ. P. 4(h)(1)(A)) which allows for service upon a corporation to be made "to an officer, director, managing or general agent, or cashier or assistant cashier or to any other agent authorized by appointment or by law to receive service." N.Y. C.P.L.R. 311(a)(1).

Here, even accepting the facts from the Certificate of Service from April 2024 (which nobody at REDC has been able to confirm), service of process was not proper under both federal and state law. Ms. Zheng is a receptionist who was never authorized to accept service of process,[8] and leaving the summons and complaint with her was not proper service—this is well-established in the case law. Indeed, Judge Gardephe recently articulated this exact point: "Indeed, courts have repeatedly found service on receptionists to be defective." *Crawford v. US Sec. Assocs.*, No. 19CIV105PGGRWL, 2020 WL 61171, at *5 (S.D.N.Y. Jan. 6, 2020) (collecting cases).

As with present matter, the Court in *Crawford,* held that "Service on a U.S. Security receptionist—who was not authorized to accept service for the corporation—was improper." *Id*.

Thus, because REDC was never properly served, this Court lacks jurisdiction over REDC, and the motion for a default judgment should be denied.[9]

---

[8] While the Certificate of Service contains boilerplate language that "Ms. Sue" was "an agent authorized to accept service of legal process," that statement is clearly incorrect. Indeed, the same boilerplate language appears on the identical forms used to certify service on other defendants. (*See* ECF Nos. 19-21.) Notably, none of the certificates state that the recipient was asked if they were authorized to accept service.

[9] Plaintiff also made an attempt to serve REDC with the Amended Complaint and various documents related to the request for a default (ECF No. 86) on November 12, 2024, but that attempt

9

### 2. Plaintiff's Motion Should Be Denied for Failure to Obtain an Entry of Default

Federal Rule of Civil Procedure 55 governs entry of default and default judgment in federal cases. "Rule 55 provides a two-step process that the Court must follow before it may enter a default judgment against a defendant." *Robertson v. Doe*, No. 05 Civ. 7046(LAP), 2008 WL 2519894, at *3 (S.D.N.Y. June 19, 2008). When default is sought because a party has failed to appear in an action, "the clerk must [first] enter the party's default." Fed. R. Civ. P. 55(a). *See also id.*; *Davis v. Castleberry*, No. 03-CV-6501L, 2004 WL 1737368, at *1 (W.D.N.Y. Aug. 2, 2004) ("A Clerk's entry of default is a prerequisite under Federal Rule of Civil Procedure 55(a) to the Court's consideration of a motion for a default judgment."). The party seeking default judgment must then "present its application for entry of judgment to the court. Notice of the application must be sent to the defaulting party so that it has an opportunity to show cause why the court should not enter a default judgment. See Fed. R. Civ. P. 55(b)(2)." *Robertson*, 2008 WL 2519894, at *3.

Here, Plaintiff failed to obtain an entry of default and failed to provide notice of the requested default to REDC until he improperly served the Amended Complaint. Moreover, this was not a mere procedural oversight of a *pro se* plaintiff. Rather, Plaintiff repeatedly requested the entry of default and was expressly denied the entry for various procedural failures. (ECF Nos. 82-91 and related docket text entries.)

Thus, Plaintiff's motion for a default judgment should be denied for failure to first obtain an entry of default.

### 3. Assuming Arguendo that REDC Is in Default, Good Cause Exists for Vacating the Default

---

at service was clearly improper under Fed. R. Civ. P. 4(c)(2) because Plaintiff served it himself—furthermore, there is no argument that REDC is in default in responding to the Amended Complaint.

10

Fed R. Civ. P. 55(c) grants federal courts the power to "set aside an entry of default for good cause." Whether good cause exists to set aside an entry of default is determined by evaluating the following factors: "(1) whether the default was willful; (2) whether the defendant demonstrates the existence of a meritorious defense to the defaulted claims; and (3) whether, and to what extent, vacating the default will cause the nondefaulting party prejudice." *In re FKF 3, LLC*, 501 B.R. 491, 500 (S.D.N.Y. 2013) (citing *W.B. David & Co. v. De Beers Centenary AG*, 507 Fed. App'x 67, 69 (2d Cir. 2013)). The standards for relieving a party of an entry of default under Fed. R. Civ. P. 55 is a "lenient standard," and "doubts are to be resolved in favor of a trial on the merits." *Meehan v. Snow*, 652 F.2d 274, 277 (2d Cir. 1981).

Furthermore, "because defaults are generally disfavored and are reserved for rare occasions, when doubt exists as to whether a default should be granted or vacated, the doubt should be resolved in favor of the defaulting party. In other words, 'good cause" and the criteria of the Rule 60(b) set aside should be construed generously." *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993).

### 3.1   REDC's untimely appearance was not willful

REDC's untimely appearance in this action was not willful. Wilfulness typically requires some showing of bad faith. *Am. All. Ins. Co. v. Eagle Ins. Co.*, 92 F.3d 57, 60 (2d Cir. 1996). Conduct sufficient to preclude relief under FRCP 55(c) must be "egregious . . . and not satisfactorily explained." *Bricklayers & Allied Craftworkers Loc. 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const., LLC*, 779 F.3d 182, 186 (2d Cir. 2015) (quoting *S.E.C. v. McNulty*, 137 F.3d 732, 738 (2d Cir. 1998)). Negligence, even gross negligence, and inadvertence do not rise to this level. *See id.*; *Am. All. Ins. Co.*, 92 F.3d at 61. In *Am. All. Ins. Co.*, for example, the defendant's mail clerk, who regularly accepted and filed service of process, mistakenly filed the

11

summons and complaint in a related case file, so they were not timely answered. *Am. All. Ins. Co.*, 92 F.3d at 59. The district court found such conduct to be willful, but the Second Circuit reversed, noting that even though the misfiling was "grossly negligent" and may weigh against setting the entry of default aside, it "was not willful, deliberate, or evidence of bad faith." *Id.* at 61.

Here, REDC's untimely answer was the result of a mistake similar to that in *Am. All. Ins. Co.* Plaintiff filed a certificate of service indicating that process was served on REDC's "front desk/receptionist," identified as Ms. Zeng. ECF No. 20. However, Ms. Zeng is not an agent authorized to receive service of process on behalf of REDC, and REDC never received notice of the pleadings allegedly served upon Ms. Zeng.

Additionally, Ms. Zeng has limited English proficiency, casting further doubt as to whether she understood the import of the pleadings that were allegedly left with her. Ms. Zengs's alleged handling of the pleadings she allegedly received is similar to the misfiling in *Am. All. Ins. Co.* Moreover, REDC's untimely answer is likely less culpable than the defendant in *Am. All. Ins. Co.* since Ms. Zeng was not authorized to receive service of process and has a limited understanding of English. REDC's untimely answer was not "willful, deliberate, or evidence of bad faith," and it should be relieved from entry of default under FRCP 55(c).

Moreover, once REDC became aware of this lawsuit it took steps to appear and defend itself, including the filing of a pre-motion letter to dismiss Plaintiff's claim and submitting a memorandum of law in opposition to Plaintiff's motion seeking injunctive relief. These are not the actions of a party that is deliberately attempting to avoid appearing in a lawsuit.

### 3.2  REDC has meritorious defenses to Plaintiff's claims

REDC also has clear meritorious defenses to Plaintiff's claims. A meritorious defense for purposes of a Rule 55(c) motion to set aside entry of default "need not be ultimately persuasive at

this stage. 'A defense is meritorious if it is good at law so as to give the factfinder some determination to make.'" *Am. All. Ins. Co.*, 92 F.3d at 61 (quoting *Anilina Fabrique de Colorants v. Aakash Chem. and Dyestuffs, Inc.*, 856 F.2d 873, 879 (7th Cir. 1988)).

Plaintiff alleges that REDC discriminated against him based on race in violation of Title VI of the Civil Rights Act of 1964, which prohibits discrimination based on race, color, or national origin in programs receiving federal financial assistance, by refusing to provide him a loan. *See* 42 U.S.C. § 2000d. To establish a claim under Title VI, a plaintiff must specifically allege that "(1) the defendant discriminated on a prohibited basis; (2) the discrimination was intentional; and (3) the discrimination was a substantial or motivating factor for the defendant's action." *Bibliotechnical Athenaeum v. Am. Univ. of Beirut*, 527 F. Supp. 3d 625, 63 (S.D.N.Y. 2021), *aff'd*, No. 21-1642, 2022 WL 710896 (2d Cir. Mar. 10, 2022) (quoting *HB v. Monroe Woodbury Cent. Sch. Dist.*, No. 11–CV–5881 (CS), 2012 WL 4477552, at *14 (S.D.N.Y. Sept. 27, 2012)).

Here, as discussed in REDC's pre-motion letter, Plaintiff fails to meet the pleading requirements for his discrimination claim. His only allegation regarding racism is "that systemic racism has caused many institutions to develop discriminatory practices in It lending or just general practices in providing services of people of color based on the perception of slavery." (ECF No. 57, p. 20.) This falls short of the pleading requirements of a discrimination claim. The case law is clear that "This Circuit continues to require that racial animus be plead with particularity." *Lopez v. Bay Shore Union Free Sch. Dist.*, 668 F. Supp. 2d 406, 414-15 (E.D.N.Y. 2009); *see also Bar-Levy v. Mitchell*, No. 22-cv-3408 (CS), 2022 WL 14746399, at *8 (S.D.N.Y. Oct. 25, 2022) (quoting *Bay Shore*). As explained in *Bay Shore*, "[t]ypically facts that support an inference of racial animus relate to long-term practices of discrimination, or to comments made by individuals

13

suggesting that they harbor racial biases." *Bay Shore* at 414-15. Here, there are no such facts alleged. Thus, REDC has a meritorious defense at the initial pleading stage that warrants "good cause" for vacating any default.

Examining the underlying facts further demonstrates that there was no discrimination. Plaintiff's loan proposal indicated that he was seeking funding for a Delaware corporation. REDC cannot lend to Delaware corporations, the funding it receives are conditioned on the grants being used to support small businesses in New York State (this some exceptions not applicable here). Plaintiff was made aware of this numerous times prior to submitting his loan application; he proceeded anyway and is now attempting to recast the denial of his proposal as unlawful when it is anything but.

Additionally, Plaintiff was unable to provide proof of his ability to repay the loan he was seeking; the bank statements he submitted showed a negative balance. REDC denial of Plaintiff's loan application was based on these entirely legitimate reasons. *See Davidson v. Citicorp/Citibank, N.A.*, No. 90 CIV. 0941 (PKL), 1990 WL 96991 (S.D.N.Y. July 2, 1990) (holding that plaintiff's poor credit score and large loan requests were legitimate reasons for defendant bank's denial of loan in a 42 U.S.C. § 1981 claim).

And, to the extent that Plaintiff is alleging a breach of a duty that REDC allegedly owed to Plaintiff, that claim also fails.[10] It has been "repeatedly held" that "an arm's length borrower-lender relationship is not of a confidential or fiduciary nature . . . " *River Glen Assocs., Ltd. v. Merrill Lynch Credit Corp.*, 295 A.D.2d 274, 275, 743 N.Y.S.2d 870, 871 (2002). Plaintiff offers

---

[10] Plaintiff's Amended Complaint alleges that In December of 2022, both Shelly Zhang and Amy Lam and other staff at Renaissance provided misinformation and where [sic] unhelpful from the beginning of the application process . . . ." (ECF No. 57, p. 20.) Elsewhere in pleadings, Plaintiff has queried whether REDC was "required to review my loan application with me prior to submission as requested by email?" (ECF No. 143, p. 3.)

no basis for the creation of any duty owed between him and REDC. Therefore this claim fails as a matter of law. Additionally, even though REDC did not had a legal obligation to do so, but REDC did, in fact, advise Plaintiff multiple times that he could not obtain the loan he sought for an out-of-state corporation, and Plaintiff simply ignored REDC's advice. (Lee Dec. ¶ 14, Ex. 1; ECF No. 32-1.)

Accordingly, because REDC has meritorious defenses to Plaintiff's claims, it should be relieved from the entry of default.

### 3.3     Plaintiff has not demonstrated prejudice

Vacating any potential default will not prejudice Plaintiff. Indeed, Plaintiff does not attempt to argue or demonstrate prejudice in his motion. (ECF No. 123.) This is because there is none.

This matter is still in the early stages with co-defendants' motions to dismiss still being briefed. (*See* ECF No. 140.) No discovery has been taken and Plaintiff recently sought to stay in the litigation. (*See* ECF No. 117.) Moreover, any delays in REDC's involvement in this litigation were caused by Plaintiff's failure to serve his motion for default judgment and entry of default requests on REDC, as he was required to do.

Plaintiff's failure to show prejudice warrants denial of his motion for a default judgment against REDC. See *O'Callaghan v. Sifre*, 242 F.R.D. 69, 75 (S.D.N.Y. 2007) ("Plaintiff has made no effort to show that he would suffer undue prejudice if his motion were denied. Under the circumstances, O'Callaghan's motion should be denied regardless of the propriety of service.") (internal citation omitted).

## **CONCLUSION**

Plaintiff's motion for a default judgment should be denied because REDC has not been properly served and therefore this Court lacks jurisdiction over REDC. Plaintiff has also failed to obtain an entry of default, a necessary condition precedent to his motion for default judgment. And, even assuming that REDC is in default, good cause exists for vacating that default and denying Plaintiff's motion.

Dated: January 27, 2024

                                          Respectfully submitted,

                                          **KENNEDYS CMK, LLP**

                                          _/s Martin R. West II
                                          Martin R. West II
                                          Blaise U. Chow
                                          570 Lexington Avenue – 8th Floor
                                          New York, New York 10022
                                          Tel: (212) 252-0004
                                          Email: martin.west@kennedyslaw.com
                                          *Attorneys for Defendant*
                                          *Renaissance Economic*
                                          *Development Corporation*